## Case No. 6,920.

### HURLEY v. SMITH.

### [1 Hask. 308.] [1]

### District Court, D. Maine. Oct., 1870.

BANKRUPTCY—FRAUDULENT PREFERENCE — MORT-GAGE—BURDEN OF PROOF.

1. A mortgage by a trader, of his entire stock and book accounts, to secure the payment of a loan previously made, is not a transaction in the regular course of business, and is prima facie fraudulent.

2. In such case, the burden rests upon the mortgagee to prove that the mortgage was made in good faith, and not in fraud of the bankrupt act.

3. A mortgage given within four months of his bankruptcy proceedings, by a debtor who was insolvent, to secure a pre-existing debt to a creditor who had reasonable cause to believe his debtor insolvent, and that the same was made in fraud of the bankrupt act [of 1867 (14 Stat. 517)] is void.

4. The testimony of witnesses residing in the neighborhood of the bankrupt, as to his credit and pecuniary standing at the time the mortgage of his stock was given, can have but slight weight to negative the knowledge the mortgagee must necessarily have obtained of the debtor's insolvency, by demanding payment of borrowed money, over due, and which the debtor informed him he could not pay, wherefore he demanded security and received a mortgage of his debtor's entire assets.

In equity. Bill by [James Hurley] the assignee in bankruptcy of Martin N. Feeny, to set aside a mortgage given by the bankrupt to the respondent [Peter Smith] as a fraudulent preference under the bankrupt act. The respondent answered, denying that he had reasonable cause to believe that the bankrupt was insolvent when the mortgage was given, and averred that the same was made in good faith and without fraud. Proofs were take.

William L. Putnam, for orator.

A. W. Bradbury and Bion Bradbury, for respondent.

FOX, District Judge. Feeny was adjudged bankrupt Dec. 25, 1869, on a petition filed against him by said Hurley, Dec. 6, 1869. Hurley was subsequently elected and qualified as assignee. The bankrupt gave a mortgage Oct. 29, 1869, of his stock in trade and book accounts to the respondent, to secure to him the payment of three notes, one for $250, dated May 2, 1869, one for $300, dated July 2, 1869, and one for $100, dated Sept. 9, 1869, all for money, borrowed of said Smith by said Feeny, and payable on demand with interest. With the exception of his household furniture valued at less than $100, all the property of the bankrupt, being his stock in trade as a merchant tailor, and his book accounts which amounted to only $78, were included in the mortgage, the whole nominally amounting to $1,-

760.67. At the time he was adjudged bankrupt, he was indebted about $2,900.

The 35th section of the bankrupt act declares, that if the "sale, assignment, transfer or conveyance of the bankrupt is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud." It will not be pretended that a mortgage of all of a debtor's estate, to secure an antecedent indebtment for borrowed money, is in the usual ordinary course of his business; on the contrary, it is entirely suicidal and destructive of his credit and standing as a trader, and is the ruin of his business. The burden then is on the respondent to establish that this mortgage was in good faith, and not in fraud of the act, and this he has unsuccessfully endeavored to accomplish.

The bankrupt commenced business in Cherryfield, March 30, 1868, and from his own account without profit. He borrowed of Smith the various sums which were secured by the mortgage. $250 of this amount had been overdue nearly six months, and instead of any payments being made towards it, the liability from time to time was extended. A few days before the mortgage was executed, Smith called on Feeny for payment. Feeny's testimony as to what took place at this interview is as follows: "I told him I could not pay him then, as I did not have the money. I told him that I knew he did not need it, and that I would secure him, so that he could give me time to meet other demands, or words to that effect; that I would secure him on my goods, if he would give me time. Smith wanted to know if I could pay him, and said if I could not he wanted security. He talked it over considerable, and came to the conclusion that he would wait, if I would secure him. When he came in he asked if I was ready for him, or could do any thing for him. I told him no I was not and could not be for some time, and that he must wait, or would have to wait, and that I would secure him on my stock." Smith admits he told Feeny "if he could not pay him he must give him a mortgage."

This testimony establishes the fact, that Smith was a creditor of Feeny for money borrowed at three different times, none of which had been repaid, some of which had been of long standing; that when he called for his money, he was not only refused payment, but was informed that he could not be paid for some time; that he must wait and take security, as Feeny needed his money to pay other liabilities; that in truth, Feeny then had no money and only $78 due him on account; that the only means of raising money was from the sale of the goods to be mortgaged to Smith, the proceeds to be applied to the payment of other liabilities, thus postponing the payment of Smith's claims to some future, indefinite, uncertain period.

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

In Re Gay [Case No. 5.279], it was decided, that a trader may be said to be in insolvent circumstances. when he is not in a condition to pay his debts in the ordinary course as persons carrying on trade usually do.

Such was certainly Feeny's condition at the time he gave this mortgage, not only unable to meet the payment of his borrowed money of long standing, but compelled to further postpone its payment until after he had raised money by the sale of his stock. and therewith discharged other demands against him. What could a creditor, for so large an amount, on a claim of such a nature as borrowed money, reasonably suppose, when his debtor declined payment, and informed him that he must wait until he had turned his stock into money and paid other demands from the proceeds, and that he should have security on the stock. Any one of ordinary intelligence from such a response must have believed that his creditor was in straightened circumstances and could not meet his liabilities in the usual ordinary course of his business.

It is shown, not only that Feeny was insolvent at the time of the execution of this mortgage, but also that Smith from what then took place had good reason to know that such was his condition.

Evidence of traders and others, residing at Cherryfield, has been offered by the defendant to establish the credit and pecuniary standing of Feeny at the date of the mortgage. None of the witnesses testify to any knowledge of his actual condition, or of the amount of his assets or liabilities, and their evidence therefore can have but little influence in determining the question as to Smith's knowledge of Feeny's situation. especially when weighed in connection with this statement of Feeny and Smith. as to the knowledge Smith then had on the subject. The 35th section of the bankrupt act declares. that all preference shall be invalid if made within four months before the filing of the petition, by any person being insolvent. when the party receiving such security having reasonable cause to believe that such party is insolvent. &c., and that the conveyance is made in fraud of the act.

That this conveyance was in fraud of the act, and so considered by the parties, I think there can be no doubt. The object of the bankrupt law is to provide for an equal distribution of an insolvent's estate. and when to obtain an extension of credit, an insolvent is obliged to give security to a creditor who is aware of his insolvent condition. such security is a fraud on the act, as it defeats the object and purpose of the law. Instead of yielding to the operation of the bankrupt law, and permitting an equal distribution of the estate among the creditors. the property by such a mortgage is placed beyond the reach of the law, and security is given to one creditor in full, in fraud and to the great detriment of all other existing creditors. The bankrupt law will not permit or sanction such proceedings, and all such attempts to obtain a preference must not only prove ineffectual, but if impeached and set aside by the court, will subject the guilty party to the expenses attending chancery proceedings, which are frequently quite onerous. Decree for complainant with costs.